# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| REBEKAH GENTRY-YOUNGBLOOD, | ) | |
| | ) | Case No. 1:15-cv-123 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| MGC MORTGAGE INC., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

Before the Court are Defendant Cenlar FSB's motion to dismiss (Doc. 7) and Defendants LPP Mortgage LTD, MGC Mortgage, Inc., and Jamie Morton's ("Holder Defendants") motion to dismiss (Doc. 12). Plaintiff has also filed a motion to amend her complaint, which Holder Defendants oppose. (Doc. 44.) For the following reasons, the Court will **GRANT** the motions to dismiss (Docs. 7, 12), and **DENY** Plaintiff's motion to amend (Doc. 44).

## I.     BACKGROUND

On August 12, 1998, Plaintiff and her ex-husband executed a mortgage (the "Mortgage") encumbering real property owned by Plaintiff and her ex-husband at 8505 Hale Road, Hixson, Tennessee. (Doc. 2, at 5.) The mortgage secured a ten-year balloon note (the "Note") in the amount of $89,250.00. (*Id.*; Doc. 13-1.) Plaintiff disputes whether Defendants are the owners or holders of the Mortgage and Note. (*See, e.g.*, Doc. 11, at 6–15.)

On August 1, 2008, Plaintiff filed for Chapter 13 Bankruptcy to prevent foreclosure on the property. (Doc. 2, at 5.) The Bankruptcy Court affirmed Plaintiff's Chapter 13 Plan (the

"Plan") on September 19, 2008. (Doc. 13-4.)[1] The Plan estimated arrearages on the Mortgage as $8,239.87 and named New South Federal Savings Bank as the creditor on the Mortgage. (Doc. 13-4.) Also in the bankruptcy case, New South filed a Proof of Claim in the amount of $89,777.51 (Doc. 13-5), and later filed a Notice of Transfer of Claim showing that the claim had been transferred to MGC Mortgage as servicer for LPP Mortgage (Doc. 13-6). On October 15, 2013, the Bankruptcy Trustee filed a motion to dismiss Plaintiff's bankruptcy case alleging that Plaintiff had not made payments from August to October of 2013. (Doc. 13-7.)

On August 6, 2014, Plaintiff filed an objection to the Proof of Claim and Transfer of Claim referenced above. (Doc. 13-8.) She alleged that New South was not the proper creditor, that Defendants were collecting improper payments, and that Defendants had violated the Tennessee Consumer Protection Act ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"). (Doc. 13-8.) She also alleged that: (1) the Transfer of Claim was improper and not properly supported, (2) Defendants had charged improper interest, (3) Defendants had failed to credit payments, (4) Defendants had filed false records with the County Recorder, and (5) Defendants and their agents had made fraudulent misrepresentations regarding the property. (Doc. 13-8.)

Defendant MGC Mortgage filed a motion to strike the objection on August 21, 2014. (Doc. 13-9.) After converting MGC's motion to one for summary judgment and receiving 264 pages of briefing and supporting documentation from Plaintiff, the Bankruptcy Court entered its order on October 6, 2014. (Doc. 13-10.) The Bankruptcy Court granted summary judgment in

---

[1] The Court may consider documents filed in Plaintiff's bankruptcy case on a motion to dismiss. *See Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969) ("Federal courts may take judicial notice of proceedings in other courts of record.").

MGC's favor and overruled Plaintiff's objection. (*Id.* at 6.) On October 24, 2014, the Bankruptcy Court granted the Trustee's motion to dismiss. (Doc. 13-11.)

On April 14, 2015, Plaintiff received a letter from the law firm Shapiro and Ingle, as substitute trustee for LPP Mortgage, stating that the foreclosure sale of her home was scheduled for May 11, 2015. (Doc. 2-4, at 3–4.) On April 15, 2015, Plaintiff received a letter from the law firm Baker, Donelson, Bearman, Caldwell & Berkowitz ("Baker Donelson") stating that the foreclosure sale date was May 8, 2015. (Doc. 2-4, at 5.) The notice of foreclosure sale accompanying the Baker Donelson letter incorrectly stated the address as 8503 Hale Road. (Doc. 2-4, at 6.)

On May 13, 2015, Plaintiff filed this action alleging that she was not actually behind on her payments, that Defendants lied to her about the fact that she was behind on her payments, that Defendant Jamie Morton altered records at the County Recorder's office, and that Defendant Mathew Graves made false statements regarding a Notice of Substitute Trustee foreclosure in the Chattanooga Times Free Press. (*Id.* at 6.) Based on these allegations, Plaintiff asserts claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, violations of the Fair Debt Collection Practices Act, unjust enrichment, aiding and abetting fraud, intentional infliction of emotional distress, violations of the Fair Credit Reporting Act ("FCRA"), and fraudulent practices. (Doc. 2.) Defendant Cenlar filed a motion to dismiss arguing that Plaintiff's Complaint does not state a claim and, even if it did, the claims are subject to res judicata based on the Bankruptcy Court's judgment. (Doc. 7.) Holder Defendants also filed a motion to dismiss on functionally the same grounds as Defendant Cenlar. (Doc. 12.)

While these motions were pending, Plaintiff filed a motion to amend her complaint that sought to add several new claims as well as several additional Defendants. (Doc. 40.) Four days

later, Plaintiff filed a supplement to her proposed amended complaint. (Doc. 41.) Three days after that, Plaintiff filed an additional supplement. (Doc. 42.) In light of the multiple documents, the Court denied Plaintiffs' motion to amend, but granted her leave to refile and directed her to file a single proposed amended complaint. (Doc. 43.) Plaintiff complied with the Court's instructions and filed a new motion to amend with an accompanying proposed amended complaint. (Doc. 44.) Holder Defendants responded, opposing the amendments on grounds of undue delay and unfair prejudice (Doc. 45), and Plaintiff replied (Doc. 46). These motions are now ripe for review.

## II.    STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(1). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8, by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer*, *Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal

conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff is proceeding in this action pro se. While pleadings of *pro se* litigants are "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), a *pro se* complaint must still "contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the Rule 12(b)(6) dismissal standard applies to dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii)). The "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). The Court is "not required to either guess the nature of or create a litigant's claim." *Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006).

### III.    ANALYSIS

#### A.  Plaintiff's Proposed Amended Complaint

This action was originally filed May 13, 2015.  (Doc. 1.)  Defendant Cenlar filed its

motion to dismiss June 2, 2015 (Doc. 7), and Holder Defendants filed their motion to dismiss on

July 8, 2015 (Doc. 12).  Plaintiff did not file her motion to amend until April 7, 2016.[2]  (Doc.

40.)  Holder Defendants argue that: "(i) the proposed amendment is futile; (ii) Plaintiff's delay in

filing the Motion to Amend is undue and inexcusable; (iii) Plaintiff's Motion to Amend is made

in bad faith; and (iv) allowing the proposed amendment would unjustly prejudice Holder

Defendants."  (Doc. 45.)  In reply, Plaintiff argues that her proposed amendment is not futile, not

in bad faith, and not unduly delayed.  (Doc. 46.)

Plaintiff's primary argument in support of her motion to amend is that she is entitled to an

amendment as of right because Defendants have never filed a responsive pleading.  (*Id*. at 2–3.)

This argument, however, is based on Rule 15 of the North Carolina Rules of Civil Procedure, not

Rule 15 of the Federal Rules of Civil Procedure.  Rule 15 of the North Carolina Rules of Civil

Procedure does indeed provide that "[a] party may amend his pleading once as a matter of course

at any time before a responsive pleading is served."  N.C. Gen. Stat. Ann. 1A-1, 15.  This rule is

not, however, applicable to this action.  First, even when sitting in diversity—which this Court is

not—federal courts apply federal procedural rules, not state procedural rules.  *Degussa*

*Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 532 (6th Cir. 2008).  Second, even if state

procedural rules did apply, the Court sees no reason why North Carolina's rules would be

---

[2] The version of the motion under consideration by the Court was not filed until April 29, 2016, but the Court will credit Plaintiff with her first attempt to file the amended complaint for purposes of undue delay analysis.

applicable. As far as is apparent from the docket, there is no connection between the events giving rise to this case and North Carolina.

Rule 15 of the Federal Rules of Civil Procedure supplies the appropriate rule of decision in this case and does not provide for an amendment as of right in this context. Rule 15 provides for an amendment as of right only within 21 days either of service of the complaint or of service of a responsive pleading or motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1). Because Defendants filed their Rule 12(b) motions in June and July of 2015, Plaintiff's time to file an amendment as of right has long since expired. Any other amendment may be made only with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2).

When faced with a proposed amendment, the Court should grant leave freely as justice requires. *Id.* Expounding upon this standard, the Supreme Court has stated that

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, futility, undue delay, and undue prejudice are most pertinent to the Court's decision. As detailed below, Plaintiff's proposed amendments as to both Holder Defendants and Defendant Cenlar are futile. Furthermore, there is no apparent reason for the delay of almost one year from the initial complaint, because the allegations as to Holder Defendants and Cenlar do not appear to be based on any newly acquired information.

Finally, allowing the proposed amendment would be unduly prejudicial to original Defendants. Allowing the proposed amendment would require these Defendants to engage in a new round of briefing as the amended complaint would render moot all motions directed at the original complaint. In addition, final judgment as to these Defendants would be delayed while

the Marshal's service located and served these new defendants, those defendants litigated the claims against them, and the Court rendered judgment as to those claims either through a jury trial or on the papers. During such proceedings, original Defendants would be deprived of a truly final judgment on Plaintiff's claims. Given these circumstances, the Court will **DENY** the motion to amend. The Court's ruling should not be read to express any opinion on the merits of the claims asserted against the proposed new defendants, only that the amendments concerning original Defendants are futile, and to allow new defendants to be brought in would unduly prejudice original Defendants.

### B. Holder Defendants

Defendants MGC and LPP argue Plaintiff's claims are precluded by the res judicata effect[3] of the judgment of the Bankruptcy Court and fail to state a claim. Because the Bankruptcy Court judgment is a federal judgment, the res judicata effects of that judgment are determined by looking to federal law. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007). A claim is barred by res judicata if the following elements are satisfied "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action."

---

[3] In some of Plaintiff's filings, she appears to assert that res judicata should not apply because the judgment against her was obtained via extrinsic fraud, namely Defendants failed to provide her with the appropriate payment history. Extrinsic fraud can only be the basis for overturning a judgment in very limited circumstances where it effectively prevents the party from having a fair adjudication on the merits. Restatement (Second) of Judgments § 70 (1982). Plaintiff expressly raised this missing payment history to the Bankruptcy Court. (Doc. 13-8.) Setting aside whether such an allegation can be used to void a judgment, the Bankruptcy Court squarely addressed Plaintiff's allegations, notwithstanding the missing payment history, going so far as to compare the debtor's receipts to the trustee's payment records. (Doc. 13-10.) Any objection to proceeding in the absence of the payment history could have and should have been raised in an appeal of the Bankruptcy Court's action and cannot serve as a basis for avoiding res judicata here.

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997) (emphasis omitted). Because the first three elements of the res judicata defense are common to all the claims, the Court will first address these three elements generally. The Court will then, as appropriate, address whether each of Plaintiff's causes of action states a claim and whether the fourth element of the res judicata defense is met as to each claim.

As to the first element, the grant of summary judgment by a Bankruptcy Court operates as a final judgment on the merits for purposes of claim preclusion. *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 497 F. App'x 491, 497 (6th Cir. 2012). The second element requires that the party seeking to assert claim preclusion be in privity with a party to the precluding judgment. *Bittinger*, 123 F.3d at 880. "A person who is not party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. *Id.* (quoting Restatement (Second) of Judgments § 41(1) (1980)). A person is "represented by a party" for purposes of res judicata when the party is invested with authority to represent the person. *Id.* The summary judgment dispute in the Bankruptcy Court was between Plaintiff and MGC. MGC was authorized to represent the interests of LPP in that dispute and so both MGC and LPP are entitled to the benefits of that judgment. Defendant Morton, as an agent of LPP Mortgage, is also entitled to the preclusive effect of the judgment. *See ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 999 (6th Cir. 2009) (noting that "it is well settled that a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship.").

The third element requires the Court to consider whether the claims were litigated or could have been raised in the prior action. *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Res judicata extinguishes "'all rights of the plaintiff to remedies against the

9

defendant with respect to all or any part or the transaction, or series of connected transactions, out of which the action arose.'" *Id.* at 215 (quoting Restatement (Second) Judgments § 24 (1982)). Plaintiff's allegations arise out of the actions taken by Holder Defendants with regard to her bankruptcy case, and her arguments here mirror the arguments she made in the Bankruptcy Court in her objection to New South Federal Savings Bank's proof of claim and opposition to Defendants' motion for summary judgment. (*See generally* Doc. 13-8 (Plaintiff's objection to the Proof of Claim and Transfer of Claim in her bankruptcy case).) Plaintiff claimed her payments were not properly credited and that Holder Defendants filed false documents with the County Recorder. (*Id.* at 4–5.) She also expressly alleged violations of the TCPA and the FDCPA. (*Id.* at 2.) The Bankruptcy Court addressed the merits of Plaintiff's objection, overruled it, and granted summary judgment to MGC. (Doc. 13-10.)

Having determined that the first three elements are met, the Court must now decide whether each cause of action states a claim and, if so, whether there is an identity between the causes of action alleged and the causes of action raised in the bankruptcy case. Plaintiff alleges eight causes of action in her complaint: (1) breach of fiduciary duty, (2) breach of implied covenant of good faith and fair dealing, (3) FDCPA violations, (4) unjust enrichment, (5) aiding and abetting fraud, (6) infliction of emotional distress, (7) FCRA violations, and (8) "fraudulent practices." (Doc. 2.)

### 1. Breach of Fiduciary Duty

Plaintiff's claims for breach of fiduciary duty arise out of the allegations that Defendants misapplied her payments in the repayment plan and charged her improper fees. (Doc. 2, at 7–9.) In her objections to the Proof of Claim and Transfer of Claim, Plaintiff raised these same arguments. (Doc. 13-8, at 5–6.) The Bankruptcy Court rejected these arguments in overruling

her objection. (Doc. 13-10.) Accordingly, Plaintiff's breach of fiduciary duty claims are precluded.

Even if Plaintiff's claims were not precluded by the bankruptcy judgment, the Court would nonetheless be required to dismiss her claim for failure to state a claim. "In order to recover for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-COAR3CV, 2010 WL 4939967, at *3 (Tenn. Ct. App. Dec. 3, 2010). Plaintiff relies on the existence of a debtor/creditor relationship to establish the first element, however, "[u]nder Tennessee law, the debtor/creditor relationship does not constitute a fiduciary relationship." *Wright v. C & S Family Credit, Inc.*, No. 01A01-9709-CH-00470, 1998 WL 195954, at *3 (Tenn. Ct. App. Apr. 24, 1998).

Plaintiff's proposed amendment does nothing to cure these deficiencies. The facts of the bankruptcy judgment remain the same, and she again has failed to identify a fiduciary relationship between her and any of Holder Defendants. (*See* Doc. 44-1, at 15–18.)

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing also relied on the same allegations as the breach of fiduciary duty claim and is precluded for the same reason. Furthermore, breach of implied covenant of good faith and fair dealing cannot stand absent a concurrent breach of contract action. *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000). Because Plaintiff does not properly allege a breach of contract claim, this claim must fail. *Sanders v. Wells Fargo Home Mortg., Inc.*, No. 04-2267 B, 2004 WL 3314564, at *4 (W.D. Tenn. Dec. 13, 2004). Plaintiff's proposed amended complaint similarly does not

allege a breach of contract claim between any of Holder Defendants and Plaintiff. (*See* Doc. 44-1, at 19–20.)

### 3. FDCPA Violations

Defendants identify several potential problems with Plaintiff's standing to bring FDCPA claims in a foreclosure action on a note to which she is not a signatory. However, the Court need not resolve this issue because Plaintiff fails to allege a viable FDCPA claim even assuming she has standing. Plaintiff expressly alleged some of her FDCPA claims in her objection in Bankruptcy Court (Doc. 13-8, at 3), and the Bankruptcy Court overruled Plaintiff's objection (Doc. 13-10). Accordingly, FDCPA claims based on alleged defects in allonges are precluded. Plaintiff also alleges that Defendants violated the FDCPA because she received letters from two attorneys, both of whom claimed to represent LPP Mortgage, when in reality the attorneys represented servicers and sub-servicers. (Doc. 2, at 12.) She alleges this violates 15 U.S.C. § 1692j, which provides:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

Plaintiff has failed to plead facts that would establish a violation of § 1692j; even taken as true, Plaintiff has failed to identify any person who was not a creditor that participated in the collection of the debt. Her entire theory of the complaint is that both the servicers and sub-servicers did in fact participate in the actions to recover the mortgage debt. Finally, to the extent she alleges that incorrect dates and incorrect addresses in the letters were misleading, it is clear she suffered no harm because she was present at the foreclosure sale. (*See* Doc. 44-1, at 11.)

Plaintiff's proposed amended complaint again does nothing to change the controlling effect of the Bankruptcy Court's judgment. The only new allegation against original Defendants is that they knew the amount past due contained in the letter was false. (Doc. 44-1, at 21–22.) The Bankruptcy Court has already determined that the amount sought by these creditors as past due was not false; thus, seeking this amount was not a violation of the FDCPA. (Doc. 13-10.) Accordingly, Plaintiff's FDCPA claims are precluded.

### 4. Unjust Enrichment

Plaintiff's unjust enrichment claims rely on the same arguments and are based on the same facts as her breach of fiduciary duty claim. She alleges that Defendants misapplied payments and failed to credit her payments. (Doc. 2, at 13–14.) She made these same arguments in her bankruptcy objection. (See Doc. 13-8, at 5–6.) Thus, for the same reasons stated above, her unjust enrichment claims are precluded. While her proposed amended complaint provides additional detail (see Doc. 44-21, at 23–25), it fails to take her claims outside the preclusive effect of the Bankruptcy Court judgment and is, therefore, unavailing.

### 5. Aiding and Abetting

Plaintiff appears to argue that Defendants Morton and Graves are liable to her for aiding and abetting fraud by forging documents. (Doc. 2, at 14.) She raised this forged-documents claim before the Bankruptcy Court (Doc. 13-8, at 5), and the Bankruptcy Court rejected these same arguments (Doc. 13-10, at 5–6). Accordingly, Plaintiff's Aiding and Abetting claim is precluded. Again, Plaintiff's proposed amended complaint provides additional detail and adds additional defendants (see Doc. 44-1, at 33–34), but it fails to take her claims outside the preclusive effect of the Bankruptcy Court judgment and is, therefore, unavailing.

### 6. Infliction of Emotional Distress

Based on the citations in her response to Holder Defendants' motion to dismiss (Doc. 36, at 21), the Court assumes Plaintiff intended to allege a claim for intentional infliction of emotional distress. Plaintiff claims a series of emails sent to her by Defendant Jamie Morton support her claim for intentional infliction of emotional distress. (Doc. 2, at 15; Doc. 2-5.) "The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). While the Court understands that a foreclosure action in which a person may lose her home is undoubtedly an emotionally trying process, the emails here simply cannot constitute "outrageous conduct" not tolerated by civilized society. Rather, these emails reflect quite civil correspondence from a creditor to a debtor regarding collection of a debt that is owing. The Court will thus dismiss Plaintiff's infliction of emotional distress claim for failure to state a claim.[4] Plaintiff's proposed amended complaint does not materially change this claim. (Doc. 44-1, at 26.)

### 7. Fair Credit Reporting Act

Plaintiff's FCRA claims rely on allegations that Defendants misapplied payments and failed to credit her payments. (Doc. 2, at 16–17.) However, Plaintiff once again made these same arguments in her bankruptcy objection. (*See* Doc. 13-8, at 5–6.) Her proposed amended complaint is no different. (Doc. 44-1, at 27.) Thus, for the same reasons stated above, her FCRA claims are precluded.

---

[4] Although the Court is dismissing this claim for failure to state a claim rather than relying on the preclusive effect of the Bankruptcy Court's judgment, the Court has included this claim with all the other claims against Holder Defendants in this section of the opinion for organizational purposes.

## 8. Fraudulent Practices

Plaintiff's claim for fraudulent practices again relies on arguments rejected by the Bankruptcy Court—that Defendants forged documents that resulted in a faulty chain of title, an illegal transfer of the debt, and illegal fees being charged. (Doc. 2, at 18–20.) The Bankruptcy Court rejected Plaintiff's fraudulent-documents argument and held that the transfer of the debt was valid. (Doc. 13-10, at 5–6.) Accordingly, Plaintiff's fraudulent practices claim is precluded. Plaintiff's proposed amended complaint raises the same arguments and is, therefore, futile.

## C. Cenlar

Plaintiff's Complaint alleges that Cenlar is a mortgage sub-servicer contracted by MGC in connection with Plaintiff's mortgage. (Doc. 2, at 3.) The only claim in which Cenlar is expressly mentioned is Plaintiff's claim for "breach of implied covenant of good faith and fair dealing." However, as previously discussed, breach of implied covenant of good faith and fair dealing cannot stand absent a concurrent breach of contract action. *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000). Because Plaintiff fails to properly allege a breach of contract claim, this claim must fail. *Sanders*, 2004 WL 3314564, at *4.

Additionally, throughout Plaintiff's Complaint, she raises allegations against "Defendants" without specifying which of the defendants she is referencing. To the extent Plaintiff alleges any of the above claims against Cenlar, those claims are barred for the same reasons they are barred against Holder Defendants. Plaintiff's Complaint alleges Cenlar's role in the matter is that of a sub-servicer contracted by MGC; thus, as MGC's agent, Cenlar is entitled to the same preclusive effect of the prior judgment as MGC. *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 999 (6th Cir. 2009). And for the same reasons, the proposed amendment as against Cenlar is futile.

### D.  Graves

Matthew Graves has not yet been served in this case.  Because Plaintiff is proceeding IFP (Doc. 4), the U.S. Marshal's service is responsible for service, but no summons has been returned executed for Defendant Graves.  However, the Court will nonetheless dismiss Plaintiff's claims against Defendant Graves given the analysis above.  Under 28 U.S.C. § 1915, the Court is required to dismiss a case proceeding IFP if it fails to state a claim upon which relief may be granted.  Here, Defendant Graves acted as an attorney for Holder Defendants and thus is entitled to the same preclusive effect of the Bankruptcy Court judgment.  Accordingly, Plaintiff's claims against Defendant Graves will be dismissed for the same reasons the claims against Holder Defendants were dismissed.

### E.  New Claims

In her proposed amended complaint, Plaintiff seeks to add several additional claims against original defendants, all of which are unavailing.  The Court will address each in turn.

Plaintiff's first new claim is a claim for embezzlement based on the misappropriation of fees from her bankruptcy payments.  Plaintiff cites no statute or case law providing for a private right of action for embezzlement.  To the extent she seeks to base her claim on 18 U.S.C. 656—a statute which criminalizes embezzlement by a bank employee—that statute provides no private right of action.  *Lillacalenia v. Kit Fed. Credit Union*, No. 3:14-CV-151-H, 2014 WL 3940289, at *2 (W.D. Ky. Aug. 12, 2014).  To the extent she seeks to allege conversion based on her theory of misappropriated funds, that claim would be precluded by the res judicata effect of the Bankruptcy Court's judgment for the reasons stated above.

Her next proposed claim is one for money laundering.  Her only citation, however, is to Tenn. Code Ann. § 39-14-903, a criminal statute that does not provide for private enforcement. Therefore, allowing amendment to add this claim would be futile.

Plaintiff also seeks to add a Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, claim against Defendants.  To state a state a RICO claim, a plaintiff must plead four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). "Racketeering activity" is defined as acts that constitute a violation of various state and federal criminal laws, including mail fraud, wire fraud, and extortion. 18 U.S.C. § 1961(1). To plead a "pattern of racketeering activity," Plaintiff must plead "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5).  But merely pleading two predicate acts is insufficient; "the term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity." *H.J., Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 239 (1989) (alteration, internal quotation marks, and citation omitted).  "It is this fact of continuity plus relationship which combines to produce a pattern." *Id.*

"The requirement of 'continuity,' or a threat of continuing criminal activity, ensures that RICO is limited to addressing Congress's primary concern in enacting the statute*, i.e.* long-term criminal conduct." *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133–34 (6th Cir. 1994).  There are two kinds of continuity: closed-ended and open-ended.  But whether one is assessing closed-ended or open-ended continuity, the objective of the inquiry is to determine whether the alleged violations establish the kind of "long-term criminal conduct" with which Congress was concerned when it passed the RICO statute.  *H.J.*, 492 U.S. at 242.  A short-term scheme directed at a particular finite goal may be "by its very nature, insufficiently protracted to qualify as a

RICO violation." *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir. 1991). For example, in *Paasche*, the defendant's scheme involved the allegedly fraudulent sale of nineteen parcels of land. The Sixth Circuit reversed the RICO judgment against the defendant holding that the facts alleged did not establish continuity—either open-ended or closed-ended—because the scheme was, by its very nature, finite. *Paasche*, 950 F.2d at 311 ("Paasche's fraudulent scheme was an inherently short-term affair. He had nineteen lots to sell. Once he sold all of the lots, the scheme was over. It had to be, he had no more land to sell. Thus, his scheme was, by its very nature, insufficiently protracted to qualify as a RICO violation."). The Sixth Circuit relied on similar reasoning to dismiss RICO claims in *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006). In *Moon*, "[the plaintiff's] allegations center[ed] around a single RICO scheme with a single object stemming from a dispute about whether the plaintiff [was] impaired by a workplace disability entitling him to benefits." 465 F.3d at 726. In these cases, the Sixth Circuit rejected the plaintiffs' RICO claims holding that these kinds of finite, limited schemes were simply not within the ambit of the RICO statute.

It is unclear whether Plaintiff intends to rely on closed-ended and open-ended continuity. Regardless, like the schemes alleged in *Paasche*, and *Moon*, the scheme alleged here is inherently finite, and there are no facts alleged suggesting that there is any reason to believe the scheme might be repeated. Assuming everything Plaintiff states is true; the scheme was entirely directed at depriving her of the fees she properly paid into the bankruptcy. (*See generally* Doc. 44-1.) This inherently limited scheme is similar to the fraudulent real estate and workplace disability disputes the Sixth Circuit has held do not constitute the "long-term criminal conduct" with which Congress was concerned when it passed the RICO statute. *H.J.*, 492 U.S. at

242.  Accordingly, allowing Plaintiff to amend her complaint to add a RICO claim would be futile.

Plaintiff also attempts to assert a wrongful foreclosure claim.  (Doc. 44-1, at 41.)  First of all, Plaintiff's claim is predicated on the argument that Defendants were not proper holders of the Note—an argument already rejected by the Bankruptcy Court, in a judgment entitled to preclusive effect.  (Doc. 13-10.)  Second, to set aside a foreclosure sale on the basis of a wrongful foreclosure "there must be some evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a court of equity to set aside the sale."  *Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn. 1984).  Here, Plaintiff does not allege facts that would show any action by Defendants contributed to an inadequate price.  For these reasons, an amendment to add this claim would be futile.

Finally, Plaintiff seeks to add a claim of aggravated identity theft based on 18 U.S.C. § 1028A.  (Doc. 44-1, at 43.)  Aggravated identity theft is a federal criminal statute that does not provide for a private right of action.  Furthermore, Plaintiff fails to plead any facts that would establish Defendants used Plaintiff's identification; instead, she conclusorily alleges "Defendants used Plaintiff's identity when they created false documents."  (*Id*.)  Because the amendment fails to state a claim, the proposed amendment would be futile.

As shown above, all of the claims sought to be added against original defendants in the amended complaint are due to be dismissed.  Accordingly, the proposed amendment would be futile.

### IV. CONCLUSION

For the reasons set forth above, the Court will **DENY** the Plaintiff's motion to amend her complaint. (Doc. 44.) As to original Defendants, the proposed amendments would be futile; as to the proposed new defendants, adding those claims would unduly prejudice original Defendants. The Court will **GRANT** Holder Defendants' and Cenlar's motions to dismiss (Docs. 7, 12) and **DISMISS** Plaintiff's claims against these Defendants **WITH PREJUDICE**. A separate order will enter closing the case.

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**